TOWNSEND et al. v. UNITED STATES.

(Circuit Court, S. D. New York. May 9, 1901.)

No. 2,996.

CUSTOMS DUTIES—CLASSIFICATION—STATUARY.

Statues cut, carved, and wrought by hand from a solid block of marble, by a person who is a graduate of a recognized school of art, are "statuary, the work of a professional sculptor." within the terms of paragraph 454 of the tariff act of 1897, and entitled to entry as such, without regard to the purpose for which they are to be used, the degree of artistic merit they possess, or the fact that they are copied from the work of other sculptors.

Appeal by the importers from a decision of the board of United States general appraisers, which sustained the assessment of duty by the collector of customs upon the importations in question.

Howard T. Walden, for appellants.
Henry C. Platt, Asst. U. S. Atty.

COXE, District Judge (orally). The collector assessed duties upon the importations under paragraph 115 of the tariff act of 1897 as "manufactures of marble." The importers protested insisting that they should have been assessed under paragraph 454 of the same act, as "statuary, the work of a professional sculptor."

As the case appeared before the board of general appraisers there was no evidence to show the professional character of the persons who made the imported statuary other than the declaration of the sculptors themselves and the consular certificates attached to the invoices. On the other hand, the United States produced the testimony of a number of sculptors of this country, who gave it as their opinion after examining the importations that they were not works of art and were not the work of a professional sculptor, but were, as characterized by them, ordinary commercial or "cemetery" statues. Upon that state of facts there could be no reason for disturbing the conclusion reached by the board. But since their decision evidence has been taken in this court which, it seems to me, very materially changes the situation.

The paragraph in question provides that the term "statuary," as used in the act, "shall be understood to include only such statuary as is cut, carved, or otherwise wrought by hand from a solid block or mass of marble." These importations are cut, carved and wrought by hand from a solid block of marble. The paragraph further provides that the statuary must be the production of a professional sculptor. I do not understand that the court is precluded in determining what a professional sculptor is by the opinions of gentlemen who are professional sculptors, whether they reside in this country or in the country where the statuary is made. I suppose if we were to define what a professional sculptor is we would say among other things that he is a graduate of an art school, a man educated in his profession, and who is capable of making statuary which gives a pleasing and artistic impression to the eye. It is not a question of degree; it is not wholly a question of the opinion which others

108 F.—51

may entertain of his work. There are good sculptors and there are poor sculptors, just as there are good painters and poor painters. But I think that there can be no question that a picture painted by a graduate of an art school is a painting, although it is far inferior to the work of a Meissonier or a Raphael. So in this case these productions may not have all the artistic features that the American sculptors who have testified are capable of putting into marble; but that cannot be the test. If that were the test works of art might be narrowed down to the productions of a few men who are at the head of their profession.

The fact that these importations are used in cemeteries would also seem to be wholly immaterial. It is not a question where they are used; the question is what they are. And every one who has any knowledge at all upon the subject will recognize that some of the most beautiful statuary in the world is found in the cemeteries. Witness the Pere la Chaise, the cemetery at Genoa, or even Greenwood.

Nor do I think the question can be determined by the fact, if it be a fact, that these are copies from models made by other sculptors. I suppose that if Mr. Karl Bitter or any sculptor of recognized ability should copy the Venus of Milo, or the Dying Gladiator, and send it here it would be regarded as a work of art notwithstanding that the model was made centuries ago.

In this case we have the fact undisputed that each one of the sculptors whose work is in question was graduated from the Carrara School of Art; and so far as appears that is a well-recognized school. It also appears from the uncontradicted testimony that each one of the statues in question was actually made by the sculptor himself. The model made by him was placed in front of the workman who cut out the rough stone, and afterwards the sculptor put on the finishing touches. It must be that these statues are the work of a professional sculptor within any rule that the court can formulate. If the photographs that are presented here properly represent the importations, as I suppose they do, no one can say that the statues do not have some artistic merit. In other words, I think the new evidence taken in this case differentiates it very materially from the case before the board, and the court must find as a matter of fact that these particular statues are the work of a professional sculptor and therefore entitled to come under paragraph 454 of the tariff act. This leads to a reversal of the decision of the board of general appraisers.